

**SIGNED this 21 day of June, 2010.**

_____
**JAMES D. WALKER, JR.
UNITED STATES BANKRUPTCY JUDGE**
_____

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | CASE NO. 09-52455-JDW |
| MARK P. FERLAND and, | ) | |
| ALLELI ENDAYA FERLAND, | ) | |
| | ) | |
| DEBTORS. | ) | |
| | ) | |
| WENDELL PARKER, | ) | ADVERSARY PROCEEDING |
| | ) | NO. 09-5101 |
| PLAINTIFF, | ) | |
| | ) | |
| VS. | ) | |
| | ) | |
| MARK P. FERLAND and, | ) | |
| ALLELI ENDAYA FERLAND, | ) | |
| | ) | |
| DEFENDANTS. | ) | |

BEFORE

JAMES D. WALKER, JR.

UNITED STATES BANKRUPTCY JUDGE

COUNSEL

For Plaintiff:    John K. James
                  1109 Russell Parkway, Suite 2
                  Warner Robins, Georgia 31088

For Debtors:      Gail C. Robinson
                  Post Office Box 9925
                  Warner Robins, Georgia 31095

**MEMORANDUM OPINION**

This matter comes before the Court on Plaintiff's complaint to determine dischargeability of a debt.  This is a core matter within the meaning of 28 U.S.C. § 157(b)(2)(I).  After considering the pleadings, the evidence, and the applicable authorities, the Court enters the following findings of fact and conclusions of law in conformance with Federal Rule of Bankruptcy Procedure 7052.

**Findings of Fact**

On September 19, 2007, Plaintiff Wendell Parker sold a 2000 Cadillac El Dorado to Debtor Mark Ferland for $9,999.  Although Debtor took possession of the car at that time, Plaintiff never received payment.  Plaintiff contends Debtor was responsible for the payment, and that the outstanding debt is nondischargeable as actual fraud under 11 U.S.C. § 523(a)(2), fiduciary defalcation under § 523(a)(4), or as a result of willful and malicious injury under § 523(a)(6).  Debtor contends a mutual business associate and friend of the parties, Martin Humphrey, had agreed to pay Parker; thus, Debtor owes no debt to Plaintiff, much less a nondischargeable debt. The Court held a trial on April 21, 2010, and April 29, 2010, during which the parties presented conflicting testimony about the facts of the case.

In the fall of 2007, Plaintiff decided to sell his Cadillac.  He put the car on Highway 49 in Byron, Georgia, near Debtor's place of business, with a sign announcing it was for sale.  Debtor expressed interest in buying the car for the use of his father-in-law.  Plaintiff agreed to sell it for $10,000.  Plaintiff and Debtor both testified Mr. Humphrey was present when they committed to the deal, which was done over drinks after work approximately two to three weeks before the

transaction took place.  They made no written record of the agreement.  According to Plaintiff, he and Debtor were the only parties to the transaction, and he understood Debtor would be paying him in cash.  Debtor, on the other hand, testified that Mr. Humphrey was supposed to pay Plaintiff in satisfaction of a business obligation Mr. Humphrey owed to Debtor.

On the evening of September 18, 2007, Debtor called Plaintiff to make arrangements for picking up the car.  The following morning, Debtor picked up the car.  At that time, Plaintiff signed the title and gave it to Debtor, along with a bill of sale.  Plaintiff testified he asked Debtor about payment, and Debtor requested a few more days to pay.  Plaintiff agreed to give Debtor additional time and allowed him to take the car.  Debtor denies any discussion of payment at that time.

In the year following the transaction, Plaintiff made a handful of inquiries to Debtor about payment, usually through Mr. Humphrey or another business associate of the parties, Michelle Smith.  At some point shortly after the transaction, Ms. Smith had a conversation about the Cadillac with Debtor during which she told him Plaintiff had not been paid.  Debtor expressed surprise to Ms. Smith about the lack of payment.  Several months after the transaction, Ms. Smith again mentioned to Debtor that Plaintiff had still not been paid.  Debtor responded that a house he owned with Mr. Humphrey was for sale.  When they sold the house, Mr. Humphrey was going to pay Plaintiff with Debtor's share of the proceeds.

Mr. Humphrey confirmed the facts regarding the house.  Around the time of the car transaction, Debtor and Mr. Humphrey owned a homebuilding business together.  Mr. Humphrey's daughter bought out Debtor's share of the business.  As part of the deal, she gave Debtor a half interest in the equity in a house she owned.  They planned to sell the house to an

4

employee of Mr. Humphrey. Debtor's share of the equity from the sale was expected to be about $10,000. However, the employee was unable to obtain financing, and the decline in the housing market prevented them from finding another buyer. As of the time of trial, the house had not been sold.

Neither Debtor nor Mr. Humphrey could state with certainty whether the house deal occurred before or after Debtor purchased the Cadillac. However, Mr. Humphrey testified he heard from Debtor approximately two to four months after Debtor received the Cadillac. At that time, Debtor asked Mr. Humphrey to speak with Plaintiff about waiting until the sale of the house for payment on the car. Prior to that time, Mr. Humphrey said he was unaware of any connection between the house deal and payment for the Cadillac. Furthermore, Mr. Humphrey said he never agreed to pay for the Cadillac in lieu of paying Debtor his share of the equity in the house.

About six months after the car transaction, Debtor's father-in-law moved to the Philippines and no longer needed use of the Cadillac. As a result, Debtor sold the Cadillac to an auto wholesaler for $4,999. On October 23, 2008, 13 months after the transaction, Plaintiff wrote a letter to Debtor demanding payment for the Cadillac. It was his only written communication to Debtor about the debt. Debtor wrote back, denying he owed the money, and claiming Mr. Humphrey was responsible for payment. Plaintiff then filed a lawsuit against Debtor. Mr. Humphrey testified that shortly after the suit was filed, near the end of 2008, he learned for the first time that Debtor believed he was responsible for paying for the Cadillac. Debtor, on the other hand, contends he had multiple discussions with Mr. Humphrey about paying for the car. Debtor testified that when he filed for bankruptcy, he did not believe he owed

5

any money to Plaintiff.[1]

## Conclusions of Law

At issue in this case is whether Debtor's failure to pay Plaintiff for a 2000 Cadillac El Dorado is a nondischargeable debt. Plaintiff alleges nondischargeability due to actual fraud, fiduciary defalcation, and willful and malicious injury. To prevail, Plaintiff must prove his case by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 287, 112 S. Ct. 654, 659 (1991).

Section 523(a) provides in relevant part as follows:

> (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt–
> ...
> (2) for money, property, services, or an extension, renewal, or refinancing credit, to the extent obtained, by–
> (A) false pretenses, a false representation, or actual fraud ...;
> ...
> (4) for fraud or defalcation while acting in a fiduciary capacity ...;
> ...
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

11 U.S.C. § 523(a).

### Fiduciary Defalcation

During the trial, the Court granted a directed verdict to Debtor on the issue of fiduciary defalcation. This section of the Opinion shall serve to supplement that decision.

---

[1] Debtor acknowledges that Plaintiff was listed as a creditor on his bankruptcy schedules. However, Debtor testified that he only listed Plaintiff because Plaintiff filed suit against him in state court in regard to the car. The state court proceedings are currently stayed by the bankruptcy case.

To prove fiduciary defalcation under 11 U.S.C. § 523(a)(4), Plaintiff must establish the existence of fiduciary capacity, which requires a technical trust.  Quaif v. Johnson, 4 F.3d 950, 953 (11th Cir. 1993) (citations omitted).  Plaintiff argued his friendship with Debtor created such a trust.  However, the Eleventh Circuit has defined a technical trust as an express trust created by statute or contract that imposes trust-like duties on the defendant and that pre-exists the alleged defalcation.  Id. at 953-54.  Mere friendship does not meet this standard, nor does an ordinary business relationship.  See Tarpon Point, LLC v. Wheelus (In re Wheelus), No. 07-30114, Adv. No. 07-3022, 2008 WL 372470, at *3 (Bankr. M.D. Ga. Feb. 11, 2008) (Walker, J.).  Because Plaintiff can point to neither a statute nor a contract that establishes fiduciary capacity, his debt is not excepted from discharge under § 523(a)(4).

## Fraud

To prove fraud under § 523(a)(2), Plaintiff must establish "(1) the debtor made a false representation to deceive the creditor, (2) the creditor relied on the misrepresentation, (3) the reliance was justified, and (4) the creditor sustained a loss as a result of the misrepresentation."  SEC v. Bilzerian (In re Bilzerian), 153 F.3d 1278, 1281 (11th Cir. 1998) (citing Field v. Mans, 516 U.S. 59, 73-75, 116 S. Ct. 437, 445-46 (1995)).  In this case Plaintiff argues Debtor made a false representation when he told Plaintiff he would pay for the car.  Plaintiff argues that at the time Debtor made the statement, he had no intention of paying for the car.  Plaintiff argues he gave Debtor the vehicle in reliance on the statement.

Because the parties entered into no formal written contract for the sale of the car, the evidence of fraud essentially comes down to Plaintiff's word against Debtor's word.  Plaintiff testified the parties agreed Plaintiff would sell Debtor the car, and Debtor would pay for it.  In

7

addition, Plaintiff testified that at the time of the transfer he specifically asked Debtor about payment and agreed, at Debtor's request, to wait a few days for payment. Debtor, on the other hand, testified that he and Plaintiff never discussed payment at the time of the transfer and that Mr. Humphrey would serve as the conduit for payment. Plaintiff's story remained consistent throughout his testimony and was supported by Mr. Humphrey. Debtor's testimony, however, seemed to evolve as the trial progressed. At one point, Debtor testified that he believed Plaintiff and Mr. Humphrey would work the payment into one of their multiple business deals. At another point, Debtor said he intended to pay Plaintiff from his equity interest in a house owned by Mr. Humphrey's daughter. He ultimately disclaimed any financial obligation for his purchase of the Cadillac.

With respect to the original agreement between the parties, the Court finds Plaintiff's testimony credible and concludes Debtor promised to pay Plaintiff for the car. The more mutable aspects of Debtor's testimony appear to be an attempt by him to rationalize his inability to pay for the car, rather than demonstrating any sort of intent to defraud Plaintiff. In fact, the testimony of Mr. Humphrey and Ms. Smith indicate Debtor was endeavoring to find some way to pay Plaintiff several months after the transaction. Both testified that Debtor had expressed an intent to pay Plaintiff with his share of the proceeds from the sale of the house owned by Mr. Humphrey's daughter.

The Court is persuaded Debtor intended to pay Plaintiff for the car, but simply never had the funds to do so. Thus, at the time of the transaction, his promise to pay was not made to deceive Plaintiff. Debtor's assertion that Mr. Humphrey had always borne the responsibility for payment most likely was concocted by Debtor after the fact in an attempt to excuse himself from

a payment he was unable to make. It may demonstrate some moral failing or self-deception by Debtor, but it does not prove fraud. Therefore, § 523(a)(2)(A) does not except Plaintiff's debt from discharge.

### Willful and Malicious Injury

To succeed under § 523(a)(6), Plaintiff must prove Debtor inflicted a willful and malicious injury on his property.[2] A debtor acts willfully when he has specific intent to inflict the injury or if he is substantially certain the injury will result from his actions. Kawaauhau v. Geiger, 523 U.S. 57, 61, 118 S. Ct. 974, 977 (1998); Ford Motor Credit Co. v. Moody (In re Moody), 277 B.R. 865, 870 (Bankr. S.D. Ga. 2001) (Walker, J.). A debtor acts maliciously when the injury is "wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will." Hope v. Walker (In re Walker), 48 F.3d 1161, 1164 (11th Cir. 1995) (citations and internal quotation marks omitted).

Plaintiff offered little in the way of argument on the issue of willful and malicious injury. His complaint made a bare assertion that failure to pay the debt satisfied § 523(a)(6). In addition, during the trial, Plaintiff suggested Debtor inflicted the requisite injury by selling the Cadillac to an auto wholesaler. Neither argument is persuasive.

The bankruptcy courts regularly encounter debtors who were overly optimistic about their ability to pay their debts. If mere failure to repay those debts constituted a willful and malicious injury, the bankruptcy discharge would be virtually eliminated. Furthermore, to the extent Debtor's failure to pay Plaintiff constitutes breach of contract, such a breach does not by itself

---

[2] Plaintiff has made no allegation of personal injury. Thus, he must show some injury to property.

establish willful and malicious injury.  Oney v. Weinberg (In re Weinberg), 410 B.R. 19, 36 (B.A.P. 9th Cir. 2009).  It must be accompanied by tortious conduct, which is absent in this case.  Id.  Debtor's resale of the Cadillac is not tortious.  Plaintiff had no property interest in the Cadillac that could be harmed by the sale–he neither owned the car, nor had a security interest in it.  The facts in this case simply do not fit within the scope of the willful and malicious exception.  As a result, § 523(a)(6) does not prevent discharge of Plaintiff's debt.

## Conclusion

Plaintiff in this case has failed to prove by a preponderance of the evidence that his debt is nondischargeable under § 523(a)(2), (a)(4), or (a)(6).  Therefore, the Court will enter judgment for Debtor.

An Order in accordance with this Opinion will be entered on this date.

END OF DOCUMENT